IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLE BILLIE OSHANA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 3596 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| THE COCA-COLA COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Carole Billie Oshana ("Oshana") sues Coca-Cola Company ("Coca-Cola") for violating the

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("the

Consumer Fraud Act") and for unjust enrichment. Oshana alleges Coca-Cola uses an unfair and

deceptive marketing scheme that conceals and misleads consumers into believing diet Coke from

the fountain is the same product as diet Coke sold in a can or bottle. Unlike bottled diet Coke, which

is sweetened exclusively with aspartame, fountain diet Coke is sweetened with a mixture of

aspartame and saccharin. As a result, Oshana contends Coca-Cola has sold millions of dollars in

beverages it would not have otherwise sold. The court previously granted Coca-Cola's summary

judgment motion regarding the statute of limitations periods for Oshana's claims, narrowing the

recovery periods. *Hahn v. Coca-Cola*, No. 04-3596, 2004 U.S. Dist. LEXIS 14877 (N.D. Ill. July

30, 2004).[1] Oshana's motion for class certification was denied. *See Oshana v. Coca-Cola*, 225

F.R.D. 575 (N.D. Ill. 2005). Before the court are Coca-Cola's motions to exclude the expert

---

[1] The original complaint was filed by David Hahn. Oshana was subsequently substituted
for Hahn, who voluntarily withdrew. *See* Dkt. No. 48-1.

1

testimony of Dr. Alvin Star, to strike Oshana's jury demand on her unjust enrichment claim, and for summary judgment.

## BACKGROUND

The following facts are undisputed unless otherwise noted. Consumers may purchase diet Coke beverages in two formats: from fountain dispensers or in bottles or cans. Coca-Cola Facts at ¶ 6. Fountain diet Coke and bottled diet Coke share the same name, logo and trademark. Oshana Facts at ¶ 44. Coca-Cola manufactures concentrated diet Coke syrup and sells the syrup in bulk containers to fountain outlets. Coca-Cola Facts at ¶ 6. The fountain outlets mix the syrup with carbonated water to form the finished fountain diet Coke beverage sold to consumers. *Id.* In contrast, bottled diet Coke is a finished, packaged beverage that is ready to drink when it leaves the production plant for sale and distribution to retail outlets. *Id.*

Before 1984, all diet Coke drinks were sweetened with saccharin or a blend of saccharin and aspartame. *Id.* at ¶ 7. In a November 1984 press release, Coca-Cola announced that bottled diet Coke would be sweetened with 100% NutraSweet brand aspartame. *Id.* at ¶ 8. The release also stated, "the soda-fountain version of Diet Coke would be unaffected by the change for now because of uncertainty about whether aspartame retains its sweetness over long periods." *Id.* at Ex. F. From November 1984 through 1992, Coca-Cola displayed the NutraSweet "pinwheel" trademark in its diet Coke television and print advertising materials. *Id.* at ¶ 9. Several materials affirmatively stated that diet Coke with 100% NutraSweet was not available at fountain outlets. *Id.* at ¶ 9; Oshana Resp. to Facts at ¶ 9. The parties dispute whether every advertisement included this statement. Information that diet Coke contained "100% NutraSweet brand sweetener" and "is saccharin-free" was important to consumers. Coca-Cola Resp. to Facts at ¶ 58.

2

Coca-Cola discontinued its use of NutraSweet brand aspartame and switched to a generic form of aspartame by 1993. Coca-Cola Facts at ¶ 10. Concurrent with that switch, Coca-Cola ceased its use of the NutraSweet name and logo in its diet Coke advertising. *Id.* Coca-Cola eventually ceased marketing efforts to inform the consumer that diet Coke is sweetened with "100% NutraSweet" and "is saccharin free" because the information had sufficiently seeded the market. Coca-Cola Resp. to Facts at ¶ 58. Since 1984, when bottled and canned diet Coke switched to aspartame, none of Coca-Cola's television or print advertising has stated that fountain diet Coke contains saccharin. Oshana Resp. to Facts at ¶ 9. Coca-Cola's advertisements do not expressly state that fountain diet Coke and bottled diet Coke are two different products. Coca-Cola Resp. to Facts at ¶ 44.

Coca-Cola lists saccharin as a fountain diet Coke ingredient on the labels affixed to diet Coke syrup containers sold to fountain outlets. Coca-Cola Facts at ¶ 11; Oshana Resp. to Facts at ¶ 11. Some fountain outlets, including fast-food chains, voluntarily post nutritional charts reflecting that fountain diet Coke contains saccharin. *Id.* at ¶ 12. In 1999, television news stations across the country aired reports that fountain diet Coke and other fountain diet sodas contain saccharin. *Id.* at ¶ 13. On February 26 and 28, 1999, a Fox News broadcast in the Chicagoland area (WFLD-TV) reported that almost all canned diet sodas are sweetened with NutraSweet but that fountain diet soda contains saccharin. *Id.* Coca-Cola was quoted as stating that it uses saccharin in the boxed syrup for its fountain diet soda because "saccharin can be stored for long periods of time without spoiling." *Id.* The *Chicago Sun-Times* covered the issue in 1999 in response to a national class action lawsuit filed by Judy Zapka regarding fountain diet Coke's saccharin content. *Id.* at ¶¶ 15-16.

In 1990, Coca-Cola conducted a focus group study that determined:

3

> There was no awareness whatsoever that fountain products had a different sweetener than bottle and can soft drinks . . . [consumer reaction] was first confusion, then speculation, then mild anger. Confusion consisted of a lack of understanding that statement referred only to fountain products . . . [t]hey had assumed that diet Coke was the same everywhere. Because of this assumption, they immediately questioned the bottle/can product but became even more confused as they seemed to recall a contradictory message that diet Coke had 100% NutraSweet.

Coca-Cola Resp. to Facts at ¶ 45; Oshana Ex. 7. In July 2004, Harris Interactive Corp. conducted a survey that concluded 2% of consumers believe diet Coke contains saccharin and 71% of consumers are not sure what sweetener is used in diet Coke. Oshana Facts at ¶ 47. In 2005, Dr. Alvin Star and Market Probe, Inc. surveyed a group of Illinois diet Coke consumers and determined that: (1) 33.8% of respondents believe saccharin can cause cancer; (2) 63.8% of respondents either do not know what sweetener is in fountain diet Coke, or are sure or think it does not contain saccharin; and (3) 22.3% of respondents believe fountain diet Coke is identical in formulation to bottled diet Coke and 39.8% do not know that the products have different formulations. *Id.* at ¶¶ 52-55.

Oshana began drinking fountain diet Coke in 1986 or 1987. Coca-Cola Facts at ¶¶ 30-31. She has seen three specific post-January 1, 1999 advertisements for diet Coke; none make express representations regarding diet Coke sweeteners. *Id.* at ¶ 41.

## DISCUSSION

## I. Motion to Strike Expert Report

Coca-Cola moves to exclude the testimony of Oshana's marketing expert, Dr. Alvin Star. Oshana relies on Dr. Star's report and findings in opposing summary judgment. Evidence submitted at the summary judgment stage must be admissible at trial. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). The court must first determine the admissibility of the evidence presented

4

before reaching the merits of the summary judgment motion. *See Haywood v. Evergreen Motor Cars, Inc.*, No. 02 C 6408, 2003 WL 21418248, at *1 (N.D. Ill. June 18, 2003).

Coca-Cola contends Dr. Star is not qualified to offer his opinion because he has not practiced in his field of expertise during the relevant time period. Specifically, Coca-Cola contends Dr. Star is unqualified because he has not published articles since 1985, has not made presentations at conferences since 1987, and has not taught since 1988-89. Further, Coca-Cola contends Dr. Star is unqualified because he does not currently subscribe to marketing journals and none of his published work or presentations involve branding or brand management, deceptive advertising or consumer research. Coca-Cola concludes Dr. Star is unqualified to conduct a statistically valid consumer marketing survey.

Dr. Star holds a Ph.D. in marketing from Northwestern University, an M.B.A. with marketing concentration from Harvard University, and was a marketing professor at the University of Illinois at Chicago for over twenty years. *See* Oshana Resp., Ex. D at 288. As a litigation consultant, Dr. Star has conducted marketing research on several matters including deception issues almost identical to those present in this case, *see Zapka v. The Coca-Cola Co.*, No. 99 C 8238, 2001 U.S. Dist. LEXIS 20155, *13-14 (N.D. Ill. Dec. 3, 2001), and issues pertaining to consumer confusion and deception in the trademark context. *See* Oshana Resp., Ex. D at 287, 299. In other litigation, he has served as a marketing expert to review whether advertisements were misleading or deceptive. *See id.* at 300-01. He has published and made presentations at conferences on marketing issues, has received academic awards and honors, and has formal training and education in conducting statistically valid consumer surveys. *Id.* at 44-45, 285-87, 292-93. Further, Dr. Star did not singlehandedly design and conduct the survey in this case. Rather, he worked in conjunction with

5

Market Probe, Inc., a member of the Counsel of American Survey Research Organizations. *See* Oshana Resp., Ex. B, Appx. A at 3. While some time has elapsed since he was fully active in teaching and publication, these facts can be elicited in cross-examination. The lapse in time is not so troublesome as to disqualify him as an expert in light of his significant credentials.

Coca-Cola's remaining arguments attack deficiencies in Dr. Star's survey opinions and conclusions. Federal Rule of Evidence 702 provides the standard for admitting expert scientific testimony in a federal trial. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). District courts are obligated to preclude the jury from hearing unreliable expert testimony. The court's determination is not whether an expert opinion is correct; rather the court's obligation is to examine the reliability of the expert's methodology. *Id.* at 593-96. The Supreme Court set forth five factors to guide a court in assessing the reliability of scientific expert testimony: (1) "whether a theory or technique . . . can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known or potential rate of error;" (4) "the existence and maintenance of standards controlling the technique's operation;" and (5) whether the technique or method has met with general acceptance. *Id.* at 593-94. The use of a survey methodology is not at issue. Rather, Coca-Cola challenges the validity of Dr. Star's conclusions based on his assumptions and calculations. Challenges addressing flaws in an expert's application of reliable methodology may be raised on cross-examination. *Daubert*, 509 U.S. at 596 ("vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of challenging shaky but admissible evidence"). The motion to exclude Dr. Star's opinions must be denied.

## II.    Summary Judgment Motion

### A.    Legal Standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the opposing party. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

### B.    Consumer Fraud Act Claims

#### 1.    Statute of Limitations and Deception

Coca-Cola contends Oshana's Consumer Fraud Act claims must fail because she has failed to produce any evidence of deceptive conduct during the relevant time period. Specifically, Coca-Cola argues this court, in granting Coca-Cola's summary judgment motion regarding the statute of limitations, determined that Consumer Fraud Act liability cannot be predicated on conduct that occurred prior to March 12, 2001. *See Hahn v. Coca-Cola*, No. 04-3596, 2004 U.S. Dist. LEXIS 14877, *11 (N.D. Ill. July 30, 2004) ("Coca-Cola's summary judgment motion is granted as to ICFA violations occurring before March 12, 2001, but the motion is denied as to violations allegedly

7

occurring during the statutory period"). Accordingly, Coca-Cola contends that Oshana must identify a Consumer Fraud Act violation by Coca-Cola after March 12, 2001 to prevail.

Oshana objects to Coca-Cola's argument on two grounds. First, she argues this court's holding that she can only recover for injuries occurring after March 12, 2001 does not restrict her ability to use evidence that predates the statutory period to establish liability for injuries occurring within the statutory period. However, the entire purpose of the statute of limitations is to prevent plaintiffs from bringing stale claims. The court found that the statute of limitations for the Consumer Fraud Act and unjust enrichment claims only permit recovery for violations occurring three and five years before her March 12, 2004 complaint was filed. *See Hahn*, 2004 U.S. Dist. LEXIS 14877 at *12. While Oshana may use evidence before the statutory period to support her claims, she may not rely on that evidence as constituting the violation giving rise to injury within the statutory period. Rather, she may only recover for injuries during the statutory period to the extent those injuries were caused by violations that took place during the statutory period. Liability must be predicated on violations by Coca-Cola since March 12, 2001 for the Consumer Fraud Act claim or March 12, 1999 for the unjust enrichment claim.

Second, Oshana contends deceptive conduct is relevant only to her deceptive practices claim and that Coca-Cola ignores her unfair practice and *per se* violation claims. Indeed, Oshana claims that Coca-Cola violated the Consumer Fraud Act by using deceptive *and* unfair practices, and by

8

representing that fountain diet Coke contains the same ingredients as bottled diet Coke - an alleged violation under the Uniform Deceptive Trade Practices Act.[2]

To establish a claim under the Consumer Fraud Act, Oshana must demonstrate: (1) a deceptive or unfair act or practice by Coca-Cola, (2) Coca-Cola's intent that she rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage (5) proximately caused by the deception. *See Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 776 N.E.2d 151 (Ill. 2002); *Murry v. America's Mortgage Banc, Inc.*, No. 03 C 5811, 2004 U.S. Dist. LEXIS 12045, *18-19 (N.D. Ill. June 25, 2004); *Saunders v. Mich. Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 312, 662 N.E.2d 602, 607 (1st Dist. 1996). The Consumer Fraud claim is only *per se* in the sense that if conduct enumerated in 815 ILCS 510/2 is established, deceptive conduct has been shown. To succeed on a private cause of action for damages due to a violation of Section 2 of the Consumer Fraud Act, Oshana must establish culpable conduct, proximate cause and damages.

Oshana is correct that the deception claim is separate from the unfairness claim. In other words, she need not establish a deceptive act for a determination that the practice is unfair. *See Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 961 (Ill. 2002) (reviewing each alleged violation to determine whether properly plead as deceptive *or* unfair). In determining whether a practice is unfair, consideration is given to: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; and (3) whether it

---

[2] The Consumer Fraud Act prohibits the "use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . 815 ILCS 510/2." *See* 815 ILCS 505/2. Section 2 of the Uniform Deceptive Trade Practices Act states that it is a deceptive practice to "represent that goods . . . have characteristics [or] ingredients . . . that they do not have . . ." 815 ILCS 510/2(5)

9

causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 961 (Ill. 2002). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* To succeed on her claims, Oshana must demonstrate that within the statutory period Coca-Cola engaged in a deceptive practice, an unfair practice, or that Coca-Cola represented that fountain diet Coke has characteristics or ingredients it does not have.

### 2. Culpable Conduct

Oshana claims Coca-Cola engages in a wide scheme of misconduct by marketing fountain and bottled diet Coke as the same product, with the same logo, trademark, and name, without informing consumers the fountain product contains different ingredients. She argues the marketing is deceptive because the net impression to the consumer is that the fountain and bottled products are the same. She argues the marketing is unfair because Coca-Cola knows that consumers are unaware of the sweetener differences and many consumers would cease or decrease their purchases of fountain diet Coke if they knew it contained saccharin. She contends causing consumers to unknowingly consume what they believe to be a carcinogen is immoral, unethical and unscrupulous. Finally, she claims Coca-Cola violates the Consumer Fraud Act because it represents that fountain diet Coke contains the same sweetener ingredients as the bottled product, and thereby represents the product contains ingredients it does not have.

Coca-Cola argues Oshana cannot establish culpable conduct on any of her claims because: (1) she has not seen any diet Coke ads since March 12, 1999; (2) selling two product forms under the same brand name is not a deceptive practice; and (3) Coca-Cola labels fountain and bottled diet

Coke in accordance with federal labeling laws. Coca-Cola contends these arguments also prevent Oshana from establishing culpable conduct on her unjust enrichment claim, which requires her to demonstrate she was misled, deceived, tricked or treated unfairly.

Viewing the facts in Oshana's favor, Coca-Cola fails to establish she did not see any diet Coke advertisements from 1999 to the present. In her deposition, Oshana testified that she had not seen any diet Coke advertisements since March 12, 1999. Coca-Cola Ex. H at 105. However, in interrogatory responses submitted after her deposition, Oshana identified three post-1999 advertisements. Oshana Ex. 11 at 6, 7, 10. She contends she corrected her deposition testimony because Coca-Cola withheld relevant information - its advertisements from 1999 to the present - until after her deposition and despite her counsel's requests for the information. Oshana Ex. 13. Oshana corrected her testimony in her interrogatory responses, so her position is certainly not a surprise. A supplemental affidavit that conflicts with earlier deposition testimony is permissible when the affiant lacked access to material facts before the deposition. *See e.g.*, *Miller v. A.H. Robbins Co., Inc.*, 766 F.2d 1102, 1104 (7th Cir. 1985).

Coca-Cola also contends the identified post-1999 advertisements make no representations about sweeteners and contain only bottled diet Coke imagery. Thus, Coca-Cola concludes no language or imagery in the advertisements implies that fountain diet Coke and bottled diet Coke are identical product forms. Coca-Cola asserts Oshana has never seen an advertisement where Coca-Cola states that diet Coke is a single, unified product or that bottled diet Coke and fountain diet Coke are the same product. Viewing the evidence in Oshana's favor, however, she contends the post-1999 advertisements depict products bearing the diet Coke name, logo and trademark without any reference to "bottled diet Coke" or "fountain diet Coke."

11

Further, Coca-Cola's focus on which specific advertisements were seen is somewhat misplaced. Oshana contends Coca-Cola engages in a wider scheme of misconduct by marketing all diet Coke as the same product with the same logo, trademark, and name without informing consumers they contain different ingredients. The challenged marketing is not limited to advertisements. Rather, it includes labels on fountainheads, which contain the identical name, logo, trademark and design used on the bottles, cans and packing materials. Coca-Cola contends Oshana cannot establish any misrepresentations regarding sweeteners in the relevant time period because its advertising has not made *any* representations regarding sweeteners since March 1999. Oshana's argument, however, is that Coca-Cola engaged in aggressive marketing in the 1980-90's to inform consumers that diet Coke was sweetened with aspartame and was saccharin free, then stopped when it determined the information had seeded the market. She contends the perception that diet Coke is saccharin free has been perpetuated by current advertising and marketing, which treats fountain diet Coke the same as bottled diet Coke. Because bottled diet Coke labels only list aspartame as the sweetener (correctly, because saccharin is not an ingredient in bottled diet Coke) and, because the consumer's primary access to diet Coke's ingredients is on a can or bottle, the entire marketing scheme misleads them to believe fountain diet Coke does not have saccharin either. A genuine issue of fact exists as to whether Oshana can establish that Coca-Cola's post-1999 advertising and marketing violates the Consumer Fraud Act.

Next, relying exclusively on the expert report of its marketing expert, Dr. Alice Tybout, Coca-Cola argues selling two product forms under the same brand name is not a deceptive practice. For example, Dr. Tybout asserts Tylenol sells acetaminophen in many product forms which necessarily differ in composition - pill, gel cap and liquid. Similarly, Budweiser sells beer in both

12

bottled and draft forms with corresponding differences in ingredients and processing. Coca-Cola argues consumers expect that these different product forms will provide the benefits and quality associated with each brand, while recognizing that product forms under the brand name are not necessarily identical. Coca-Cola contends the leveraged benefit associated with all product forms under the diet Coke name is great taste and refreshment. The problem with this argument is that it presumes Coca-Cola's marketing takes a specific form. Not surprisingly, Oshana's expert, Dr. Alvin Star, disagrees that diet Coke is simply marketed as different products under one brand. *See* Oshana Ex. 5 at 2. The nature of Coca-Cola's marketing remains a disputed fact.

Finally, Coca-Cola argues its compliance with federal labeling laws is a complete defense to liability under Section 10b of the Consumer Fraud Act.[3] Coca-Cola asserts its primary duty is to label the products it sells in accordance with federal labeling laws, a duty it undisputedly performs properly. Thus, Coca-Cola maintains, not printing a statement that fountain diet Coke contains saccharin on the cup in which the consumer is served a fountain diet Coke is not a basis for liability. To the extent Oshana seeks to impose labeling or disclosure requirements other than those required under federal law, Coca-Cola suggests her claims are more properly considered by the Food and Drug Administration. Finally, Coca-Cola argues that even if the court determines Section 10b is not a complete bar to liability, Oshana has failed to identify any misrepresentations or omissions in connection with the labels on either bottled or fountain diet Coke products.

These arguments must be rejected. It is not Oshana's contention that Coca-Cola improperly labels its products or that the Consumer Fraud Act is violated by its labeling processes. As another

---

[3] Section 10b(1) provides: "Nothing in this Act shall apply to any of the following ... actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1).

judge of this court found in rejecting this argument on summary judgment in *Zapka v. The Coca-Cola Co.*, No. 99 C 8238, 2001 U.S. Dist. LEXIS 20155, *13-14 (N.D. Ill. Dec. 3, 2001), the allegedly deceptive conduct is the marketing of diet Coke, not product labeling. The federal labeling laws do not specifically authorize diet Coke's marketing practices. The fact that syrup canisters of diet Coke, which generally are not seen by consumers, are labeled in compliance with federal law is irrelevant to whether Coca-Cola's marketing practices violate the Consumer Fraud Act or result in unjust enrichment.

Coca-Cola's arguments regarding culpable conduct are unpersuasive. There are genuine issues of fact as to whether Coca-Cola has engaged in a deceptive or unfair act or practice.

### 3. Materiality

Coca-Cola argues summary judgment is appropriate because Oshana cannot satisfy the materiality element of her claims. To establish a deceptive practices violation of the Consumer Fraud Act, Oshana must show a misrepresentation or omission relating to a material fact. *See Limberopoulos v. First Midwest Bank*, No. 02 C 5008, 2004 U.S. Dist. LEXIS 4085 at * 4 (N.D. Ill. Mar. 16, 2003). An omission of material fact or a material misrepresentation constitutes a deceptive act under Illinois law. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 504-05, 675 N.E.2d 584, 595 (Ill. 1996). A misrepresentation or omission is material "if the plaintiff would have acted differently had she been aware of it, or if it concerned the type of information upon which she would be expected to rely in making her decision to act." *Id.*; *see also Limberopoulos*, 2004 U.S. Dist. LEXIS 4085 at * 4. The test for materiality is an objective one - whether a reasonable person could be expected to rely on the information. *Limberopoulos*, 2004 U.S. Dist. LEXIS 4085 at *7.

14

Coca-Cola contends Oshana cannot demonstrate that she would have acted differently had she been aware of fountain diet Coke's saccharin content because she admits she continues to purchase and consume fountain diet Coke knowing that it contains saccharin. Further, Coca-Cola notes that Oshana's expert, Dr. Alvin Star, surveyed 326 Illinois consumers and asked whether their purchase of fountain diet Coke would be affected if the drink contained saccharin. Coca-Cola contends the presence of saccharin is immaterial to a typical consumer because only 24% indicated that the presence of saccharin would affect their decision, with 20% indicating their decision to purchase would be negatively affected. Finally, Coca-Cola argues that any misrepresentation must occur before the consumer's decision to purchase. Because Oshana consumed fountain diet Coke before March 12, 1999, Coca-Cola concludes any representations post-March 12, 1999 were not material to her decision to purchase the product.

Whether the alleged misrepresentations were material remains a question of fact. Oshana testified that she avoids fountain diet Coke and that she has not consumed diet Coke from the fountain since learning that it contains saccharin. *See* Oshana Ex. 12 at 39. She further testified that she tries to minimize the amount of saccharin she consumes and would like to eliminate saccharin from her diet completely. *Id.* at 42. A misrepresentation or omission is material "if the plaintiff would have acted differently had she been aware of it, or if it concerned the type of information upon which she would be expected to rely in making her decision to act." *Connick*, 174 Ill.2d at 504-05, 675 N.E.2d at 595. Based on her efforts to reduce or eliminate saccharin and fountain diet Coke from her diet, a reasonable jury could conclude that she found the presence of saccharin material.

Coca-Cola provides no authority that a misrepresentation is immaterial if only 24% of consumers would behave differently. In any event, Oshana's expert also found that: (1) 33.8% of

15

respondents believe saccharin can cause cancer; (2) 63.8% of consumers either did not know what sweetener was in fountain diet Coke, or were sure or thought it did not contain saccharin; and (3) 22.3% of respondents believed fountain diet Coke is identical in formulation to bottled diet Coke and 39.8% did not know that the products had different formulations. *See* Oshana Ex. 5. Coca-Cola's 2004 survey evidence established that 98% of those surveyed did not think that fountain diet Coke contained saccharin. *See* Oshana Ex. 17. Finally, Coca-Cola's 30(b)(6) witness stated that the information that diet Coke contains "100 percent NutraSweet brand sweetener" and "is saccharin-free" was "important to consumers." Coca-Cola Resp. to Oshana Facts at ¶ 58. The results of Coca-Cola's 1990 survey may also bear on the materiality of consumers' lack of knowledge of saccharin in diet Coke. Lack of knowledge does not necessarily reflect deception. However, there is sufficient evidence to raise a genuine issue of fact as to whether the alleged misrepresentations are material to a reasonable consumer.

Finally, Coca-Cola's argument that because Oshana consumed fountain diet Coke before March 12, 1999, any representations post-March 12, 1999 were not material to her, is nonsensical. The representations were arguably material to her decision to discontinue her purchase of the product upon learning of the saccharin content.

### 4. Causation, Injury and Damages

Coca-Cola contends Oshana cannot establish causation, injury or damages because she admits that she continues to drink fountain diet Coke knowing it contains saccharin. For the reasons stated above, that argument is rejected. In addition, Coca-Cola argues that because the court previously found Oshana was on notice as of November 14, 1999 that fountain diet Coke contains

16

saccharin, she cannot establish causation, damages or injury for purchases after November 14, 1999. Coca-Cola's argument is flawed.

In dismissing Oshana's continuing violation argument on Coca-Cola's first summary judgment motion, this court determined that the presence of saccharin could have been discovered with reasonable diligence as of November 14, 1999, when the *Zapka* lawsuit was filed in this district. *See Hahn*, 2004 U.S. Dist. LEXIS 14877 at *8-9. The filing of a prior class action in the same jurisdiction by the same attorneys alleging identical claims, and the corresponding press coverage, were "sufficient to put a plaintiff on constructive notice." *Id.* Accordingly, the court held the statute of limitations period had not tolled. *Id.* The issue there, however, was not whether the presence of saccharin was actually discovered at any particular time. Rather, the issue was whether the presence of saccharin could have been discovered through the exercise of reasonable diligence. The court did not determine that Oshana had actual notice of saccharin in November 1999. Instead, the holding was simply that she could have known in November 1999, therefore her continuing violation and tolling arguments were rejected. Oshana contends she made purchases of fountain diet Coke after March 12, 1999 that she would not have made if she knew it contained saccharin. Viewing the facts in Oshana's favor, her ability to establish causation, injury and damages are disputed factual issues.

## C. Unjust Enrichment and Disgorgement

On both her Consumer Fraud Act and unjust enrichment claims, Oshana seeks disgorgement of Coca-Cola's revenues from the sales of diet Coke attributable to Coca-Cola's alleged wrongful conduct. Oshana estimates the amount subject to disgorgement is "at least tens or hundreds of millions of dollars," and her damages expert offers several alternate measures of the potential disgorgement award ranging from more than $8 million to almost $100 million. *See* Oshana Resp.

17

to Facts at ¶ 43. Oshana admits her individual damages equal $650, the amount she claims she paid for fountain diet Coke purchases after March 12, 1999. Oshana also seeks disgorgement in addition to damages on her Consumer Fraud Act claim.

### 1.    Individual Disgorgement of Profits

Coca-Cola argues Oshana's disgorgement claims fail because she seeks disgorgement of *all* ill-gotten profits from the sale of fountain diet Coke in the State of Illinois during the relevant time period. Coca-Cola contends Oshana is not entitled to full disgorgement of all profits on an individual basis. Oshana responds she is entitled to seek disgorgement of all ill-gotten profits, regardless of whether the profits are greater than her individual damages.

Oshana is partially correct - she may seek disgorgement beyond her individual compensatory damages. Theoretically, Oshana is entitled to disgorgement in excess of her actual damages if, in harming her, Coca-Cola gained more than her actual damages.[4] This is because the focus in a disgorgement scenario is on the defendant's gain, not the plaintiff's loss. *See e.g., R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, No. 99 C 1174, 2004 WL 161653, *7 (N.D. Ill. July 19, 2004); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 3, comment b (2000). However, Oshana has not established she is entitled to personal recovery of all profits unjustly obtained from the public at large. By seeking disgorgement of profits beyond those gained at her expense, Oshana essentially seeks recovery for Coca-Cola's hypothetical liability to other consumers. If she prevails at trial, Oshana will prove only the facts of Coca-Cola's illegal conduct against her. Yet she seeks recovery of Coca-Cola's ill-gotten gains from its alleged illegal conduct

---

[4] It is unclear whether Coca-Cola gained in excess of Oshana's compensatory damages of $650.

as to other consumers, without establishing that Coca-Cola caused injury to other consumers. *See e.g.*, *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 797 (8th Cir. 2004) (in punitive damages context, "[p]unishing systematic abuses . . . in a case brought by an individual plaintiff . . . deprives the defendant of the safeguards against duplicative punishment that inhere in the class action procedure"); *Johnson v. Ford Motor Co.*, No. S121728, 2005 Cal. LEXIS 6559, *37-38 (Cal. 2005) (addressing appropriateness of full disgorgement to single plaintiff as punitive damages). Oshana essentially seeks class action recovery in a case where class certification has been denied.

Oshana relies on several cases supporting the proposition that a disgorgement award may exceed actual damages. However, none of the cases address whether a single plaintiff may recover disgorgement of all profits obtained to others' detriment. For example, in *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983), plaintiff sought profits under the Copyright Act. Damages were not limited to the plaintiff's actual losses, and the Seventh Circuit determined disgorgement of profits could be appropriate even if disgorgement resulted in a windfall to the plaintiff. *Id.* at 1120. However, the only person injured in *Taylor* was the plaintiff-copyright owner. There, disgorgement of all profits the defendant-infringer gained at plaintiff's expense, even if those profits exceeded his actual losses, remained directly tied to plaintiff's injury. In *Regnery v. Meyers*, plaintiffs-stockholders were not permitted to *personally* recover full disgorgement upon establishing defendants' breach of fiduciary duty. *See* 287 Ill. App. 3d 354, 365-66, 679 N.E.2d 74, 81 (Ill. App. 1997). Rather, while the court ordered full disgorgement, it determined plaintiffs were not entitled to a windfall. All persons who were stockholders at the time of the illegal sale were given an opportunity to intervene to obtain their *pro rata* share of the disgorgement. *In re Cardezem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 828 (E.D. Mich. 1999), a non-binding case interpreting North

Carolina law, focused on recovery of all disgorged profits by members of a class. The court did not indicate that an individual plaintiff could obtain all profits gained to the detriment of the entire potential class.

Oshana contends limiting disgorgement divests the court of jurisdiction because her damages will not exceed the requisite $75,000 needed for diversity. She argues the court and Coca-Cola already determined she is entitled to individual disgorgement of all profits, both in removal and in denying her motion to remand. Oshana's argument must fail. Removal was predicated on Oshana's refusal to admit that she did not individually seek damages in excess of $75,000. *See* 7/16/04 and 7/30/04 Minute Orders, Dkt. Nos. 24, 27. The court found "Coca-Cola's contention that disgorgement of profits to any individual plaintiff would result in a multi-million dollar damage award *was uncontested.*" *Id.* (emphasis added). In denying remand, the court determined that Oshana, by refusing to agree to a limitation on disgorgement, admitted the value of disgorgement plausibly exceeded $75,000. *Id.*

"[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal . . . the fact that . . . the rulings of the district court after removal reduce the amount recoverable below the jurisdictional requirement, will not justify remand." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291-292 (U.S. 1938); *see also First Union Rail Corp. v. Heller Performance Polymers*, No. 03-7063, 2004 U.S. Dist. LEXIS 12803, *9 (N.D. Ill. July 7, 2004) ("the inability of the plaintiff to *recover* an amount adequate to give the court jurisdiction does not . . . oust jurisdiction") (emphasis in original). Coca-Cola removed based on the ambiguousness of the complaint and Oshana's vague responses to Coca-Cola's requests to admit. In doing so, Coca-Cola certainly did not argue or concede Oshana was entitled to $75,000.

20

Oshana is not entitled to the damages incurred by all Illinois consumers. Any disgorgement award must be traceable to her individual injury. Accordingly, Oshana's disgorgement remedy is limited to only those ill-gotten gains that Coca-Cola obtained *from her* in connection with its alleged illegal conduct.

## 2. Remedy at Law

Coca-Cola argues Oshana's claims for disgorgement fail in their entirety because disgorgement is an equitable claim and she has an adequate remedy at law in the form of monetary damages. Because Oshana does not allege she suffered any harm other than her claimed out-of-pocket losses, Coca-Cola contends $650 in money damages provides her complete restitution. Oshana responds that her claims for unjust enrichment seeking disgorgement or restitution are legal claims under Illinois law because she essentially seeks monetary recovery.

Unjust enrichment is typically an equitable claim. *See Baker v. O'Neal Holdings, Inc. v. Amer. Pub. Auto Grp.*, 403 F.3d 485, 489 (7th Cir. 2005); *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822, 829 (7th Cir. 1998). However, "[t]he doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies . . ." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (Ill. 1989). There is support for Oshana's contention that an unjust enrichment claim that seeks restitution is a legal claim. *See Burns Philip Food, Inc. v. Cavalea Continental Freight, Inc.*, 135 F.3d 526, 527-28 (7th Cir. 1998) (rejecting ruling that restitution based on unjust enrichment is an equity claim and stating "we do not find persuasive indications that the Supreme Court of Illinois thinks of restitution as an action in equity rather than at law. . ."); *First Nat'l Bank of Waukesha v. Warren*, 796 F.2d 999 (7th Cir. 1986) (where plaintiff dropped fraud claim and wanted to proceed solely on unjust enrichment claim

to avoid jury trial, "[t]he characterization of these actions as equitable does not control where as here plaintiff seeks money for its own coffers"). Yet, in her unjust enrichment claim, Oshana does not seek restitution of the money she lost in diet Coke purchases. Rather she seeks "damages in the form of requiring Coca-Cola to disgorge the money that it has made from its illegal conduct from March 12, 1999 to the present to Plaintiff . . ." *See* 2nd Am. Compl. at ¶ 67(B). Disgorgement is an equitable remedy. *See e.g.*, *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2004 U.S. Dist. LEXIS 17876, *14-15 (N.D. Ill. Sept. 1, 2004) (disgorgement is form of equitable restitution); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 76 F. Supp. 2d 868, 873 (N.D. Ill. 1999) ("disgorgement is an equitable remedy based upon the theory of unjust enrichment"); *SEC v. Nappy*, No. 93 C 3446, 1993 U.S. Dist. LEXIS 15043, *4-5 (N.D. Ill. Oct. 22, 1993) ("[e]ven though disgorgement involves money, it is an inherently equitable remedy"). Thus, the underlying nature of Oshana's unjust enrichment claim is equitable.

Despite the equitable nature of the disgorgement claim, Coca-Cola has not established disgorgement is unavailable because Oshana has an adequate remedy at law. The Consumer Fraud Act provides for the recovery of "actual economic damages or any other relief which the court deems proper" to persons or businesses injured by defendant's violation of the Act." 815 ILCS 505/10a(a). Other relief deemed proper may include disgorgement of profits. *See B. Sanfield*, 76 F. Supp. 2d at 873. "Courts award disgorgement in limited situations, primarily when a defendant's profits represent unjust enrichment derived from diversion of business that clearly would otherwise have gone to the plaintiff." *Id.* Nevertheless, as previously discussed, a disgorgement award may exceed actual damages. Coca-Cola's argument is unpersuasive.

### 3. Jury Demand

The equitable nature of Oshana's unjust enrichment claim implicates Coca-Cola's motion to strike Oshana's jury demand. The right to a jury trial is only preserved when the relief sought by the plaintiff is characterized as legal, rather than equitable. *See e.g.*, *FTC v. Febre*, No. 94 C 3625, 1994 U.S. Dist. LEXIS 17908, *3-5 (N.D. Ill. 1994). The court, rather than a jury, decides the issues on an equitable remedy. *SEC v. Nappy*, No. 93 C 3446, 1993 U.S. Dist. LEXIS 17905, *16 n.1 (N.D. Ill. Dec. 13, 1993) ("[s]ince both disgorgement and injunctive relief are equitable remedies, the court rather than a jury must decide the issues"). Because disgorgement is an equitable remedy, the motion to strike the jury demand on Oshana's unjust enrichment claim is granted in part. The court need not strike the jury demand on the entire unjust enrichment claim. Indeed, to do so is unreasonable where, as here, the underlying bases for the unjust enrichment claim mirror Oshana's Consumer Fraud Act allegations. The jury may consider the unjust enrichment liability determination, and the issue may be submitted to the jury for a recommendation on the disgorgement remedy. The jury's recommendation is advisory. Fed. R. Civ. P. 39(c).

### CONCLUSION

For the foregoing reasons, Coca-Cola's motion to exclude expert testimony is denied. The motions for summary judgment and to strike Oshana's jury demand are granted in part. Oshana's disgorgement remedy is limited to only those ill-gotten gains that Coca-Cola obtained *from her* in

connection with its alleged illegal conduct. The jury may consider the unjust enrichment liability

determination, and may make an advisory recommendation on the disgorgement remedy.

July 13, 2005                                    ENTER:

Suzanne B. Conlon
United States District Judge